Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2318 | **DATE** | 4/25/2000 |
| **CASE TITLE** | Mega Mfg. vs. Haco-Atlantic | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Hearing on plaintiff's motion for TRO held and concluded. The motion is granted as set forth in the Memorandum Opinion and Order attached hereto. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | APR 27 2000 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 17 |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MEGA MANUFACTURING, INC., )
)
       Plaintiff, )
)
v. ) No. 00 C 2318
)
HACO-ATLANTIC, INC., )
)
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Mega Manufacturing, Inc. ("Mega") moves to temporarily restrain Haco-Atlantic, Inc. ("Haco") from displaying its "Shark" ironworker machine at the American Welding Society (AWS) Expo and Convention between April 26 and April 28, 2000 at Chicago's McCormick Place Convention Center and from otherwise infringing upon its trade dress. For the reasons stated herein, I grant the motion.

I.

Mega and its competitor Haco are both engaged in the manufacture and sale of "ironworker" machines, i.e. machines designed to cut and shape sheets of metal. For over twenty-five years, Mega has manufactured and sold an ironworker machine called the "Piranha," which is shaped like its namesake fish. On April 10, 2000, Mega alleges it learned of Haco's sale of an ironworker



called the "Shark" and Haco's intent to display the Shark at the upcoming AWS Expo. Mega claims the Shark is a copy of its Piranha which infringes its trade dress, the product of significant time and resources. Mega's letters, voice mails, and faxes requesting Haco cease and desist the manufacture and sale of this product went unanswered, and it filed this action on April 24, 2000, seeking damages and injunctive relief.

II.

A party seeking a temporary restraining order ("TRO") must make a threshold showing of: (1) a better than negligible likelihood of success on the merits, (2) irreparable harm if the TRO is denied, and (3) the inadequacy of any remedy at law. Once this threshold showing is made, I balance the harm to plaintiff if the preliminary injunction were wrongfully denied against the harm to the defendants if the injunction were wrongfully granted, and the impact on persons not directly concerned in the dispute (the "public interest"). *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

III.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits infringement of trademarks, also protects trade dress. Trade dress refers to the total image of a product, including

2

features like size, shape, color, texture, graphics or other visual features. *Roulo v. Russ Berrie & Co., Inc.* 886 F.2d 931, 935-36 (7th Cir. 1989). To prevail on a claim of trade dress infringement, a plaintiff must show that (1) its trade dress has acquired secondary meaning, and (2) that the similarity of the defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1997), cert. denied, --- U.S. ----, 119 S.Ct. 336 (1998).

The evidence before me related to other ironworkers consists mainly of photographs of Mega's and Haco's products and products produced by other manufacturers. This evidence does indicate, however, that Mega's Piranha was the only ironworker product with a distinctive, streamlined "fish-with-teeth" appearance; the other products in the market -- including those of Haco -- look more like large boxes. A consumer looking for Mega's product need look no farther than its design, recognizable from afar. Mega claims that its considerable investment of time and resources has led to substantial goodwill such that its unique design features and trade dress lead customers to attribute the unique appratance to Mega's Pirhana. Haco's attorneys do not really contest that the Shark is

3

strikingly similar to the Piranha in design. Instead, they assert that the Piranha does not have a secondary meaning and consumers would not confuse it with the Piranha.

"Secondary meaning denotes an association in the mind of the consumer between the trade dress of a product and a particular producer." *Storck USA v. Farley Candy Company, Inc.*, 797 F.Supp. 1399, 1406 (N.D. Ill. 1992)(but it is not necessary that public be aware of identity of the producer, just that they associate the trade dress with a single source). Secondary meaning may be established in trade dress cases through direct and indirect evidence, including: consumer testimony and surveys, exclusivity and length and manner of use, amount and manner of advertising, sales volume, market position, and proof of intentional copying. *Id.* Although Mega does not have, at this early stage, direct consumer evidence, it has presented sufficient evidence of the remaining factors. According to its affidavits, Mega has been the exclusive manufacturer of a predatory fish-type of ironworker for the past twenty-five years. It has offered evidence of its market position, customer base and twenty-five million dollars incurred in advertising. The Shark appears to be a knock-off of the Piranha. Thus, Mega has shown that it has at least some likelihood of

establishing that its Piranha ironworker has acquired secondary meaning.

Whether customers will be confused between the two products is a closer question. In determining whether a likelihood of confusion exists between trade dresses, I must consider a number of factors none of which are considered dispositive and the weight of which varies based on the facts. In determining likelihood of confusion, the Seventh Circuit has considered several factors to be important, including: (1) the degree of similarity between the trade dresses, (2) the area and manner of concurrent use, (3) the degree of care likely to be used by consumers, (4) the strength of the plaintiff's trade dress, (5) actual confusion, (6) "intent on the part of the alleged infringer to palm off his products as those of another." *McGaw v. Walt Disney*, 787 F.2d 1163, 1167-68 (7th Cir. 1986); *see also Sundicate Sales Inc. v. Hampshire Paper Corp.* 192 F.3d 633 (7th Cir. 1999). Whether there is a likelihood of confusion must be determined based on the totality of the circumstances. At this stage, I conclude that there is a better than negligible likelihood that Mega will be able to establish likelihood of confusion. There is a distinct "similarity" between the trade dresses of the Piranha and the Shark, including nearly identical dimensions, similar

colors,[1] a stunningly similar design, and the names which evoke similar visions of predatory fish. The machines are used in the same area and manner; they are used for the same purposes and sold in the same markets using the same distribution and sales channels to the same consumers. I have no evidence regarding the care taken by actual consumers, but Mega has presented affidavits of persons in the industry who were actually confused by the similarity between the products. Finally, it is reasonable to conclude that Haco, by choosing to design and manufacture this product using the same lines, functions, colors, and evocative image as the Piranha, intended to capitalize on the Piranha's success by essentially copying it and renaming it the Shark.

Although Congress has placed the burden on the plaintiff to show that a design is nonfunctional, 15 U.S.C. § 1125(a)(3) (1999), neither side introduced much compelling evidence regarding functionality. The examples of competitors' products -- including other ironworkers manufactured by Haco -- support Mega's position that the design distinctions are not functional.

Mega has come forward with enough evidence to persuade me by

---

[1] Although the defendants contend that the Shark is yellow and grey, rather than the orange and green of the Piranha, in the photographs and advertising material before this court, the Shark colors appear to be green and orange.

6

a preponderance of the evidence that it has some likelihood of success on the merits. In addition, Mega alleges it will suffer harm not only from lost customer lists and leads from the AWS Expo, but also a loss of goodwill if its consumers are sufficiently confused so as to lose confidence in Mega and its products. *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982); *Health O Meter, Inc. v. Terraillon Corp.*, 873 F.Supp. 1160. 1175 (N.D. Ill. 1995). If Haco indeed copied Mega's trade dress, it brought any harm it will suffer from the TRO on itself and cannot claim it will suffer more hardship than Mega, which represents that it spent a quarter-century building up its product. *International Kennel Club of Chicago, Inc. v. Mighty Star Inc.*, 846 F.2d 1079, 1091 (7th Cir. 1988). Nor do I see any significant harm to the public by ensuring that a potentially infringing product which may be confusing is not available during the time a temporary restraining order will remain in effect. *Id.* (public interest is consumer's interest in not being deceived about products they purchase). I will therefore GRANT Mega's motion for a temporary restraining order preventing Haco from displaying, advertising, promoting (including via Internet or trade publication promotions), or selling the Shark provided Mega posts a surety bond

7

in the amount of $75,000 by 10:00 a.m. on April 26, 2000. This order will remain in effect until May 8, 2000.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated:     April 25, 2000